IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

NORMA CHILDERS,

     Plaintiff,

v.                                     No. 13-1209

HARDEMAN COUNTY BOARD
OF EDUCATION,

     Defendant.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
_____

Before the Court is Defendant, Hardeman County Board of Education's ("BOE"), motion

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket

Entry ("D.E.") 23.) Plaintiff, Norma Childers ("Childers"), has filed a response. (D.E. 28.) For

the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

*Background*

Childers was employed from 1977 until 2013 by the BOE in a variety of teaching and

administrative positions. (Def.'s Stat. of Material Facts ¶¶ 1–3, 8, 19, 65–66, D.E. 23-3.) She

had been diagnosed with interstitial cystitis, diverticulitis, and irritable bowel syndrome ("IBS"),

which have several symptoms, including the need to use the restroom frequently. (Id. ¶ 5;

Declaration of Norma Childers ("Childers Dec.") ¶¶ 2–4, D.E. 28-11.) The majority of her

employment with the BOE was spent at Middleton (Tennessee) High School, where in the early

2000s she was the technology lab supervisor. (Def.'s Stat. of Material Facts ¶¶ 2–3, D.E. 23-3.)

The lab's location, and the presence of a teaching aide, allowed Plaintiff to use the restroom

whenever necessary, so she never needed, or requested, any accommodation for her conditions. (Id. ¶ 6; Childers Dec. ¶ 6, D.E. 28-11.)

In 2006, Childers was promoted to a facilitator position at Grand Junction Elementary by the director of schools, Dr. Donald Hopper. (Def.'s Stat. of Material Facts ¶¶ 7–9, D.E. 23-3.) She took medical leave from March 2007 until the end of the 2006–07 school term for bladder surgery to help treat her interstitial cystitis. (Id. ¶¶ 15–16.) Plaintiff again did not request an accommodation because she had a flexible schedule and access to a restroom. (Id. ¶ 17; Childers Dec. ¶ 7, D.E. 28-11.)

Plaintiff returned to work for the 2007–08 school year, and was reassigned by Hopper to a teaching/administrative position at the Hardeman County Learning Center/Alternative School. (Def.'s Stat. of Material Facts ¶ 18–19, 21, D.E. 23-3.) She did not request any accommodations since the Learning Center's open layout allowed her to take breaks while the other staff monitored the children. (Id. ¶¶ 22, 24–26; Childers Dec. ¶ 10, D.E. 28-11.)

On June 14, 2012, Childers was notified by Hopper that, due to system-wide budget cuts, she was being reassigned to a classroom teacher position at Bolivar Middle School for the upcoming school year. (Def.'s Stat. of Material Facts ¶¶ 27, 30–31, D.E. 23-3.) Plaintiff had a teaching endorsement in science and Bolivar Middle School needed a teacher for that subject. (Id. ¶ 56.) The reassignment caused Plaintiff to go from an eleven-month to a ten-month contract, which resulted in a salary reduction. (Id. ¶ 29.)

On July 1, 2012, Hopper retired as director of schools and was replaced by Warner Ross. (Id. ¶ 50.) On July 19, 2012, Ross received letters from Plaintiff's physicians explaining her medical conditions and the limitations they caused. (Id. ¶¶ 51–52.) Ross met with Childers around July 30, 2012. (Id. ¶¶ 53–54.) She did not specifically discuss her need for

accommodations before accepting the teaching position, but instead relied on the restrictions laid out in her physicians' letters. (Id.)

Plaintiff suffered a work-related foot injury and was off until released to return to work on March 3, 2013. (Id. ¶ 57.) She did not report to Bolivar Middle School, but instead filed for Social Security disability benefits on August 29, 2012. (Id. ¶¶ 58–60.) Plaintiff never contacted the school's principal to determine what, if any, accommodations were available, but instead retired effective March 3, 2013. (Id. ¶¶ 57, 62–65.)

Childers filed a complaint of adverse action against the BOE on November 5, 2012, claiming that her transfer to the middle school was a demotion on the basis of race and sex. (Id. ¶ 75.) The complaint was forwarded to the Equal Employment Opportunity Commission ("EEOC"), where the allegation was changed to discrimination on the basis of sex, race, and disability. (Id. ¶ 80.) The EEOC investigated the claims and issued a notice-of-suit letter on April 10, 2013. (D.E. 1-1.) Plaintiff filed this action on July 8, 2013, alleging that Defendant discriminated and retaliated against her on the basis of her disability in violation of the Americans with Disabilities Act Amendments Act of 2008 ("ADA-AA" or "ADA").[1] (D.E. 1.)

*Legal Standard*

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co., 750 F.3d 573, 578 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[1] The alleged discriminatory acts by Defendant occurred after January 1, 2009 and are therefore covered by the Americans with Disabilities Act Amendments Act of 2008. Milholland v. Sumner Cnty. Bd. of Educ., 569 F.3d 562, 566–67 (6th Cir. 2009). The Court will use ADA and ADA-AA interchangeably in this opinion.

(1986)). It is not to "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251–52).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." Automated Solutions Corp. v. Paragon Data Sys., Inc., 756 F.3d 504, 520 (6th Cir. 2014) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." Slusher v. Carson, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). The nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. Anderson, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id. A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

*Analysis*

Childers brings several claims under the ADA, alleging that she was demoted in 2012 from an administrative position at the Learning Center to a teaching position at Bolivar Middle School because of her disability, and, that the BOE failed to accommodate her disability following the demotion. (Compl. ¶¶ 24–29, D.E. 1.) Plaintiff also contends that Defendant

retaliated against her by withholding an early retirement bonus after she filed her EEOC complaint.  (Id. ¶¶ 30–35.)  As she does not contest the dismissal of her common law retaliation claim, it is hereby DISMISSED.

Plaintiff seeks compensatory damages for emotional distress arising out of Defendant's discriminatory acts, punitive damages based on Defendant's intentional discrimination, and reinstatement to an administrative position with the BOE.  (Id. ¶¶ 29, 34–35.)  Defendant contends it is entitled to summary judgment on all these issues.  (D.E. 23 at 1.)  The Court addresses each in turn.

A.   **Exhaustion**

At the outset, the BOE asserts it is entitled to summary judgment because Plaintiff did not exhaust its internal procedures before bringing her lawsuit.  (D.E. 23-1 at 14–16.)  Board Policy 5.500 requires employees to immediately report alleged discriminatory acts to a supervisor or the director of schools.  (Id. at 14.)  Defendant asserts that even if Plaintiff reported the alleged discrimination at the July 2012 meeting with Ross, she failed to appeal his decision to the Hardeman County School Board within thirty days as required by Policy 5.500.  (Id. at 14–15.)  Plaintiff states the only administrative requirement that must be exhausted before bringing suit is the timely filing of an EEOC complaint, and should the Court find she was required to satisfy Policy 5.500, her July 2012 meeting with Ross and subsequent letter to the school board met those requirements.  (D.E. 28 at 13–14.)

"To exhaust administrative remedies under the ADA . . . a plaintiff must file an EEOC charge within 180 days of the alleged discrimination . . . ."  Hoover v. Timken Co., 30 F. App'x 511, 513 (6th Cir. 2002).  "Once the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has ninety days to file a civil action."  Id.  A claimant must "explicitly file[] the

claim in an EEOC charge or the claim [must] reasonably be expected to grow out of the EEOC charge." Jones v. Sumser Ret. Vill., 209 F.3d 851, 853 (6th Cir. 2000) (quoting Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998)).  The EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Id. (quoting Abeita, 159 F.3d at 254).

Childers filed her discrimination charge with the EEOC on December 11, 2012, (D.E. 23-5 at 18), 179 days after receiving the June 15, 2012 reassignment notification—the first alleged instance of disability discrimination.  Plaintiff received her right-to-sue letter from the EEOC on April 10, 2013, (id. at 24), and filed her complaint 89 days later on July 8, 2013.  (See D.E. 1.) The EEOC charge alleged that Defendant discriminated against her based on several grounds, including disability.  (See D.E. 23-5 at 18.)  The charge was sufficiently precise to put Defendant on notice about what practices or actions Plaintiff was complaining.  Jones, 209 F.3d at 853.  She was not required to exhaust any internal BOE policies before bringing her ADA claims in this Court.  Therefore, Defendant's request for summary judgment for failure to exhaust is DENIED.

As to Childers's claim that Defendant retaliated against her by withholding an early retirement bonus following the filing of the EEOC charge, the Court finds that Plaintiff was not required to submit a second discrimination charge alleging retaliation.  See Scott v. Eastman Chem. Co., 275 F. App'x 466, 474 (6th Cir. 2008) ("Courts have held that retaliation growing out of the EEOC charge is reasonably foreseeable and therefore a plaintiff is not required to file yet another EEOC charge.").  Defendant's request for summary judgment on Plaintiff's retaliation claim for failure to exhaust is also DENIED.

**B.    ADA Claims**

Under the ADA, it is unlawful for employers to "discriminate against a qualified

individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination "is a general term that encompasses, among other theories disparate treatment, harassment, and failure to accommodate." Wells v. Chrysler Grp. LLC, 559 F. App'x 512, 514 (6th Cir. 2014). Plaintiff brings the following claims under the ADA[2]: (1) unlawful demotion; and (2) failure to accommodate. (Compl. ¶¶ 25–29, D.E. 1.)

### 1. *Unlawful Demotion*

Defendant insists that it is entitled to summary judgment on the unlawful demotion claim because there is no evidence supporting Plaintiff's allegation that she was discriminated against because of her disability when she was reassigned from an administrative to a teaching position in 2012. (D.E. 23-1 at 3–8.) Childers has not offered any direct evidence that the BOE demoted her based on her disability, so the Court will analyze this claim under the familiar McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting framework. *See* Stansberry v. Air Wis. Airlines Corp., 651 F.3d 482, 487 (6th Cir. 2011).

To establish a prima facie case of discrimination using indirect evidence, an employee must show that there is a genuine issue of material fact regarding each of the following elements: "(1) [that] she was 'disabled' under the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) a nondisabled person replaced her." Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 (6th Cir. 2008). The plaintiff's disability must be a "but for" cause of the

---

[2] The parties' briefs treat the two ADA claims as one generic disability discrimination claim. The Court will analyze these as separate claims since different legal frameworks apply to each.

adverse employment action. <u>Lewis v. Humboldt Acquisition Corp.</u>, 681 F.3d 312, 321 (6th Cir. 2012) (*en banc*).

If the employee makes out a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." <u>Nance</u>, 527 F.3d at 553. "If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." <u>Id.</u> Under <u>McDonnell Douglas</u>, the burdens of production shift, but the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" <u>Id.</u> at 553–54 (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)). For the purposes of a motion for summary judgment, the Court must consider "whether there is sufficient evidence to create a genuine dispute at each stage of the <u>McDonnell Douglas</u> inquiry." <u>Id.</u> at 554 (internal quotation omitted). The parties dispute whether Plaintiff is disabled, whether Defendant had knowledge of her disability prior to the 2012 reassignment, and whether she was replaced with a non-disabled person. (D.E. 23-1 at 5–8; D.E. 28 at 6–12.)

       i.   <u>Disability</u>

The ADA Amendments Act of 2008, which became effective January 1, 2009, broadened the definition of disability in 42 U.S.C. § 12102. <u>Jones v. Nissan N. Am., Inc.</u>, 438 F. App'x 388, 397 n.9 (6th Cir. 2011). The relevant period to assess the existence of a plaintiff's disability is the time of the discriminatory acts. <u>Swanson v. Univ. of Cincinnati</u>, 268 F.3d 307, 316 (6th Cir. 2001). Childers alleges she was demoted because of her disability in June 2012, therefore the Court will apply the ADA-AA's broadened standards and definitions. To establish a disability discrimination claim, Plaintiff must show that she is "disabled" within the meaning of

the ADA. The ADA provides Plaintiff three avenues to prove she is disabled under the Act. The term "disability" can mean:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). While not the model of clarity, Plaintiff's brief intimates her disability falls under subsection 1(A)—that she suffers from physical impairments that substantially limit one or more major life activities. (D.E. 28 at 6.) The BOE maintains that her physical impairments do not substantially limit any major life activities since she never needed or requested any accommodations prior to the 2012 reassignment. (D.E. 23-1 at 5.)

In determining whether a person is disabled under subsection 1(A), the Court must decide first, whether the plaintiff suffered from a mental or physical impairment and second, if the impairment exists, whether it substantially limits a major life activity. Azzam v. Baptist Healthcare Affiliates, Inc., 855 F. Supp. 2d 653, 658–59 (W.D. Ky. 2012). EEOC regulations define a physical or mental impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine[.]"[3] 29 C.F.R. § 1630.2(h)(1).

Childers's first impairment, interstitial cystitis, consists of "a physical condition that causes [her] to experience pain, pressure, [and] a burning and urgent sensation" when she

---

[3] The Court may rely on the regulations interpreting the ADA, which are presumed valid unless contested by the parties. See Keith v. Cnty. of Oakland, 703 F.3d 918, 925 (6th Cir. 2013).

urinates. (Childers Dec. ¶ 2, D.E. 28-11; Deposition of Norma Childers ("Childers Dep.") at 132–33, D.E. 23-4.) This can occur at any moment and require her to use the restroom immediately and frequently—as much as twenty times in one hour, and for up to five to ten minutes per visit. (Childers Dec. ¶ 2, D.E. 28-11.) Plaintiff's second physical impairment, diverticulosis, is triggered by eating and causes her to "experience frequent pain and cramping in [her] colon," and "extremes between constipation and diarrhea." (Id. ¶ 3; Childers Dep. at 135, D.E. 23-4.) Her third impairment, IBS, causes her to experience similar symptoms as diverticulosis. (Childers Dec. ¶ 4, D.E. 28-11; Childers Dep. at 137–38, D.E. 23-4.) Plaintiff's physical problems involve "one or more of the body systems, such as . . . digestive, [and] genitourinary[.]" 29 C.F.R. § 1630.2(h)(1). She has alleged facts sufficient to show that an impairment exists. Azzam, 855 F. Supp. 2d at 658; Roush v. Weastec, Inc., 96 F.3d 840, 844 (6th Cir. 1996) (holding that plaintiff's interstitial cystitis was a physical impairment under the narrower, pre-ADA-AA definition of "disabled").

Next, Plaintiff must show that due to her physical impairments, she is substantially limited in a major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). The term "substantially limits" must "be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(i). Evidence related to whether a physical impairment is substantially limiting must derive from the plaintiff's own experience. 29 C.F.R. § 1630.2(j)(iv).

Here, Childers claims that because of her conditions she "cannot stand for longer than five (5) to ten (10) minutes at a time[,]" and that she "cannot sit still for any longer period of time." (Childers Dec. ¶ 5, D.E. 28-11.) Plaintiff testified that she took frequent restroom breaks while working at the Learning Center and Grand Junction Elementary. (Childers Dep. at 41–43,

50–51, 137–38, D.E. 23-4.) She also provided letters from her physicians detailing her colon and bladder conditions, how these conditions require her to frequently use the restroom, and how she has difficulty standing all day. (D.E. 23-5 at 10–11.)

Working, standing, and the operation of major bodily functions such as the "digestive, genitourinary, bowel, [and] bladder . . . functions" are all major life activities. 29 C.F.R. § 1630.2(i)(1)(i)–(ii). When considering the particularities of these conditions in the light most favorable to Plaintiff, the Court finds that her impairments substantially limit the major life activities of controlling the operation of her major bodily functions, working, and standing. *See* Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999) (upholding jury verdict finding that the plaintiff's condition that sometimes prevented her from controlling her bowels as compared to the general population was an impairment substantially limiting the performance of major life activities); Brown v. Humana Ins. Co., 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013) (holding that plaintiff's IBS, which sometimes forced her to use the restroom twenty times a day, was a disability that substantially limited the major life activity of working).

ii.     Defendant's Knowledge of Plaintiff's Disability

Regarding the fourth element of the prima facie case, Plaintiff must put forth evidence that Defendant knew or had reason to know of her disability. The sole-decision maker with respect to the adverse employment action must know, or have reason to know, of that employee's disability. *See* Nilles v. Givaudan Flavors Corp., 521 F. App'x 364, 368 (6th Cir. 2013) (collecting cases). The parties dispute whether Plaintiff informed Hopper of her disability in 2006 such that he knew or had reason to know of it when he made the 2012 reassignments. (D.E. 23-1 at 5–6; D.E. 28 at 6–7; Childers Dec. ¶ 12, D.E. 28-11.)

Hopper, the director of schools, and sole-decision maker with regard to the 2012 changes,

testified that he "was not aware that there was any serious medical conditions" involving Childers when he transferred her. (Deposition of Donald Hopper ("Hopper Dep.") at 36, D.E. 23-10.) Childers states that Hopper "knew [she] had health problems" and demoted her in part because of them. (Childers Dec. ¶ 12, D.E. 28-11; Childers Dep. at 105, D.E. 23-4.) Plaintiff recalls that she had a conversation with Hopper in 2006 about her interstitial cystitis after another BOE employee was transferred because that employee's same condition prevented her from working in the classroom. (Childers Dec. ¶ 12, D.E. 28-11, Childers Dep. at 168, D.E. 23-4.) She described this as "general conversation," and nothing "specific." (Id.) Plaintiff also testified that she "did not discuss accommodations with Dr. Hopper." (Id. at 159.)

Childers has not put forth "sufficient evidence to create a genuine dispute", Nance, 527 F.3d at 554, as to whether Hopper knew of her disability before making the reassignments. At most, Plaintiff has alleged that Hopper knew she had health problems, not that she suffered from a disability. See Nilles, 521 F. App'x at 369 ("Knowledge of an employee's symptoms, however, does not necessarily equate to knowledge of [her] disability."); Brown v. BKW Drywall Supply, Inc., 305 F. Supp. 2d 814, 829 (S.D. Ohio 2004) ("Knowing that an employee has health problems, however, is not the same as knowing that the employee suffers from a disability."). Childers never asked for accommodations for her conditions prior to the reassignment, (Childers Dep. at 167–68, 170, D.E. 23-4), and did not provide Defendant with medical documentation explaining her conditions until after Hopper's retirement. (Id. at 129–30.) Because Plaintiff cannot show that Defendant had knowledge of her disability prior to the 2012 reassignment, she cannot make out a prima facie case of disability discrimination. Therefore, the Court GRANTS Defendant's motion for summary judgment on the unlawful demotion claim.

## 2.    *Failure to Accommodate*

The BOE asserts this claim should be dismissed because Plaintiff retired before giving it the opportunity to provide a reasonable accommodation.  (D.E. 23-1 at 6–7.)  An employer discriminates against an otherwise qualified individual on the basis of a disability when it does not make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."    42 U.S.C. § 12112(b)(5)(A).  A failure to accommodate claim "unavoidably 'involve[s] direct evidence (the failure to accommodate) of discrimination' because the employer necessarily relied on the worker's disability in making decisions."  Cash v. Siegel-Robert, Inc., 548 F. App'x 330, 334 (6th Cir. 2013) (quoting Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 868–69 (6th Cir. 2007)).

"When an ADA plaintiff premises his claim upon direct evidence, we jettison the familiar McDonnell Douglas burden-shifting framework applicable in indirect-evidence cases . . . and [] analyze the claim under the following framework:

> (1)    The plaintiff bears the burden of establishing that [] she is disabled.
>
> (2)    The plaintiff bears the burden of establishing that [] she is 'otherwise qualified' for the position despite [] her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation.
>
> (3)    The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer."

Kleiber, 485 F.3d at 869.  The plaintiff must establish that she "requested and was denied" a reasonable accommodation.  Lockard v. Gen. Motors Corp., 52 F. App'x 782, 786 (6th Cir.

2002).  An employer's duty to provide a reasonable accommodation does not arise until the Plaintiff requests one.  *See* Breitfelder v. Leis, 151 F. App'x 379, 386 (6th Cir. 2005) (holding that there was no failure to accommodate because the plaintiff failed to request a reasonable accommodation from the employer).  In requesting a reasonable accommodation, the employee is not required to use magic words like accommodation, disability, or ADA.  Leeds v. Potter, 249 F. App'x 442, 449–50 (6th Cir. 2007) (citing Smith v. Henderson, 376 F.3d 529, 535 (6th Cir. 2004)).  However, the plaintiff must tie the request for accommodation to her existing medical condition.  Id.  Under the ADA, reasonable accommodations include, "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).

The plaintiff's request for a reasonable accommodation triggers "an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. § 1630.2(o)(3).  This interactive process is mandatory.  Nance, 527 F.3d at 556.  Parties are therefore directed to participate directly with each other, Kleiber, 485 F.3d at 871, and not "obstruct the process or refuse to participate" in good faith.  Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 202 (6th Cir. 2010).  An employer failing to participate in good faith faces liability under the ADA if a reasonable accommodation would have been possible.  Lafata v. Church of Christ Home for Aged, 325 F. App'x 416, 422 (6th Cir. 2009) (citing Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 (9th Cir. 2000), *judgment vacated on other grounds*, 535 U.S. 391 (2002)). An employer will not be liable under the ADA when it engages with an employee who refuses to participate in good faith or withholds essential information.  Wells v. Chrysler Grp. LLC, No. 3:08CV2264, 2013 WL 2631371, at *6 (N.D. Ohio June 11, 2013).

An employer has acted in good faith when it meets readily with the employee, discusses

reasonable accommodations, and suggests other possible positions for the employee. Jakubowski, 627 F.3d at 203. An employer is not required to propose a counter accommodation in order to participate in good faith, although doing so "may be additional evidence of good faith." Id. It is in the employer's best interest to propose a reasonable accommodation, as an employee "cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation." Talley v. Family Dollar Stores of Oh., Inc., 542 F.3d 1099, 1108 (6th Cir. 2008) (citing Hedrick v. W. Reserve Care Sys. & Forum Health, 335 F.3d 444, 457 (6th Cir. 2004)). If an employee rejects a proposed reasonable accommodation, they are no longer considered a "qualified individual with a disability." Hedrick, 355 F.3d at 457.

As noted, Plaintiff has satisfied her burden of proving she is disabled under the ADA. The parties do not dispute that, without some form of accommodation, Childers could not perform the essential functions of the teacher position because it would require her to stand for more than five to ten minutes, and she might be prevented from using the restroom as needed. (D.E. 23-1 at 6–7; D.E. 28 at 7, 10–11.) The parties' dispute centers on her request for accommodation following the 2012 reassignment and the BOE's response, or lack thereof. To survive summary judgment, Plaintiff must submit evidence sufficient to create a genuine dispute of material fact regarding who is to blame for the breakdown in the interactive process. The Court must first determine whether she proposed an accommodation that was objectively reasonable. Lockard, 52 F. App'x at 786; Kleiber, 485 F.3d at 870.

Childers spoke with Ross around June 15 or 16, before he was appointed director of schools, but after she had received the reassignment notice. (Childers Dep. at 162, D.E. 23-4.) Plaintiff told Ross that as soon as he was named director, she needed to meet with him to discuss

the reassignment.  (Id.)  After Ross's promotion, Plaintiff met with him in early July of 2012 and informed him that she was not "physically able to do this job," and that she could not "go in the classroom."  (Id. at 163–64.)  Ross asked Plaintiff if she was going to accept the teaching position—to which she responded she would have to meet with her doctors before deciding.  (Id. at 164.)  Ross told Plaintiff to contact him after she met with her doctors.  (Id.)  Childers stated that Ross contacted her in mid-July to see what the prognosis was, and she informed him that her doctors decided she would not be able to teach in the classroom because of her health.  (Id.)  Plaintiff advised Ross her physicians would be submitting letters explaining her conditions and restrictions.  (Id.)  In response, Ross stated that if he changed Plaintiff's reassignment he would have to "change everybody's."  (Id. at 165.)  He instructed Plaintiff to let him know as soon as possible what her doctors were recommending as far as restrictions and accommodations.  (Id.)

After the physicians submitted letters explaining her conditions and restrictions, including her need to use the restroom frequently, and her inability to stand for long periods of time, Childers and Ross met again "right before school was ready to start[.]"  (Id.)  While Plaintiff admits that she and Ross "never talked about accommodations[,]" Plaintiff asked Ross, "What can we do here?" in reference to her physician letters and the restrictions.  (Id. at 171.)  She testified that Ross told her those letters were "irrelevant" and never communicated that the BOE would place Plaintiff in a classroom at Bolivar Middle that was close to a private restroom, that she would be allowed to sit as needed, or that the BOE would work with her on reasonable accommodations.  (Id. at 171–72, 177–79.)  Plaintiff testified that Ross stated if she was that sick she should "go home" and that he would help her "get [her] disability started."  (Id. at 177.)

Childers memorialized this final meeting in a letter dated July 30, 2012 which stated the physical layout of the Learning Center allowed Plaintiff to follow the medical management plans

of her physicians and that the reassignment to Bolivar Middle would prevent her from complying with that plan and force her into early retirement. (D.E. 23-9 at 4.)

From this evidence, it appears that Plaintiff was requesting to either be reassigned to her prior position at the Learning Center, or be allowed to take breaks at Bolivar Middle when needed. Her request to be reassigned to a former job at the Learning Center was objectively unreasonable because employers do not have a duty "'to create new jobs [or] displace existing employees from their positions . . . in order to accommodate a disabled individual.'" Kleiber, 485 F.3d at 869 (quoting Burns v. Coca-Cola Enters., Inc., 222 F.3d 247, 257 (6th Cir. 2000)). At the time of the July 2012 meeting, Plaintiff's previous position at the Learning Center had been filled by Thomas Polk. (Hopper Dep. at 35, D.E. 23-10.)

Plaintiff's request for frequent breaks was sufficient to trigger Defendant's duty to provide a reasonable accommodation. Linebarger v. Honda of Am. Mfg., Inc., 870 F. Supp. 2d 513, 521 (S.D. Ohio 2012) (holding that defendant's duty to provide additional restroom breaks as a reasonable accommodation was initiated by a physician's assessment and a meeting with the plaintiff). While Plaintiff did not use magic words like, accommodation, disability, or ADA in her meeting with Ross, she adequately tied her request for an accommodation, additional restroom breaks, to her existing medical condition—interstitial cystitis, diverticulosis, and IBS, by asking, "What can we do here?" Leeds, 249 F. App'x at 449–50. The Court must now determine who is "responsible for a breakdown in the interactive process." Lockard, 52 F. App'x at 788.

Childers testified that, in response to the accommodation request, Ross characterized her impairments as "irrelevant" and stated that if she was too sick to work, she should go home. (Childers Dep. at 184, D.E. 23-4.) Ross related that Plaintiff asked him to "reconsider the

transfer to the classroom from the learning center." (Deposition of Warner A. Ross, II ("Ross Dep.") at 14, D.E. 23-8.) He stated that Plaintiff told him about her need to leave the classroom and go to the restroom frequently. (Id. at 27.) Ross recalled that his response was that he was "not inclined to change the reassignment plan." (Id. at 28.) Ross could not remember whether anyone communicated to Plaintiff that she would have a classroom assistant available to help cover when she needed to use the restroom. (Id. at 30.) He specifically denied telling Plaintiff that her medical conditions were irrelevant. (Id. at 31.) Ross claims that the BOE was not given the opportunity to accommodate Plaintiff because she never reported to Bolivar Middle School. (Id.) He could not recall if Plaintiff gave him copies of her physician's restriction letters, (id. at 15), and only remembered meeting with Plaintiff one time. (Id. at 13.) Defendant contends, and Plaintiff admits, that she never contacted the principal at Bolivar Middle to discuss what accommodations were available. (D.E. 23-1 at 6–7; Childers Dep. at 183–84, D.E. 23-4.)

At the summary judgment stage, drawing all reasonable inferences in favor of the Plaintiff, the Court finds that she has presented sufficient evidence to raise a question of material fact as to which party was responsible for failing to participate in the interactive process in good faith. See Talley, 542 F.3d at 1110. A reasonable jury could conclude that Defendant failed to make a good faith effort to accommodate Plaintiff's disability and because of this, she retired. Because the parties offer conflicting testimony about who is at fault for the interactive process breaking down, see Rorrer v. City of Stow, 743 F.3d 1025, 1038 (6th Cir. 2014) (noting that the weighing of evidence and credibility judgments are prohibited at the summary judgment stage), Defendant's request for summary judgment on this claim is DENIED.

**C.** **Retaliation**

The BOE seeks dismissal of Childers's retaliation claim because she failed to specifically

allege which benefits were withheld after she filed the EEOC complaint. (D.E. 23-1 at 8–9.) Plaintiff states that Defendant retaliated against her by refusing to pay an early retirement bonus after she retired in 2013. (Compl. ¶¶ 31–35, D.E. 1.)

A prima facie case of retaliation under the ADA requires a showing that "'1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected.'" Spence v. Donahoe, 515 F. App'x 561, 572 (6th Cir. 2013) (quoting Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001)). "'The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.'" Id. (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)). If a prima facie case is established, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. Cardenas-Meade v. Pfizer, Inc., 510 F. App'x 367, 372 (6th Cir. 2013). If the employer does so, the plaintiff then has the burden to show that such a reason was merely pretext for discrimination. Id.

Plaintiff engaged in protected activity by filing a complaint with the EEOC that was served on Defendant. She claims that Defendant then withheld a $5,000.00 early retirement bonus because of the filing. (D.E. 28 at 12; Childers Dec. ¶ 24, D.E. 28-11.) Defendant states that Plaintiff was on leave due to a work-related injury from August 7, 2012 until March 3, 2013 and instead of returning to work, she retired. (D.E. 23-1 at 8.) Defendant's only argument is that Plaintiff failed to specify in her complaint what benefits were withheld. However, in her response to Defendant's motion, she alleged that a $5,000 bonus was not provided. (D.E. 28 at 12.) Defendant has not proffered a legitimate, non-retaliatory reason for allegedly withholding this payment. Cardenas-Meade, 510 F. App'x at 372. Therefore, the Court DENIES summary

judgment on this claim.

**D.** **Punitive Damages**

Defendant maintains that Plaintiff's claim for punitive damages should be dismissed because it was against the Board of Education, a government entity. (D.E. 23-1 at 9.) Plaintiff counters that punitive damages are appropriate because of Defendant's intentional discrimination. (D.E. 28 at 12.)

42 U.S.C. § 1981a provides what damages are recoverable in employment discrimination cases. The section concerning punitive damages states that "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ." 42 U.S.C. § 1981a(b)(1). The statute's plain language precludes punitive damage awards against a governmental defendant. In Tennessee, "while county boards of education are not part of the general county government in the sense that they derive their powers and duties from the county charter, they are in essence party of that local government, exclusively vested with statutory authority in all matters relating to public education." S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ., 58 S.W.3d 706, 715 (Tenn. 2001); Reed v. Rhea Cnty., 225 S.W.2d 49, 50 (Tenn. 1949) ("It follows that a County Board of Education is a county government entity exercising a governmental function in the operation and maintenance of the schools of the County."). Plaintiff's complaint also characterizes Defendant as a "political subdivision of the State of Tennessee." (Compl. ¶ 6, D.E. 1.) Therefore, the Court GRANTS Defendant's request for summary judgment on the issue of punitive damages.

**E.** **Mental Anguish/Emotional Distress Damages**

The BOE asserts it is entitled to dismissal of Childers's claim of damages for mental anguish or emotional distress arising from the alleged discriminatory acts because the Tennessee

Governmental Tort Liability Act ("GTLA") bars suits arising out of the intentional infliction of mental anguish by governmental entities. (D.E. 23-1 at 9–10.) Plaintiff states that the GTLA applies only to state law tort claims and has no application to claims brought under the ADA, a federal statute. (D.E. 28 at 13.)

The Sixth Circuit has upheld the award of compensatory damages for mental anguish and pain and suffering resulting from employment discrimination by a defendant in violation of the ADA. *See* Knight v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 136 F. App'x 755, 762 (6th Cir. 2005). The plain language of 42 U.S.C. § 1981a(b)(3) states that compensatory damages for violations of the ADA may include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish . . . ." The only statements in § 1981a referencing governmental immunity relates to punitive damage awards. *See* 42 U.S.C. § 1981a(b)(1). Similarly, in describing the scope of the GTLA and noting that it did not apply to discrimination claims, the Tennessee Supreme Court stated that "'[r]ace and age discrimination, which are actionable only by virtue of statutory fiat, are not really torts qua torts.'" Sneed v. City of Red Bank, Tenn., ___S.W.3d___, 2014 WL 6851446, at *8 (Tenn. Dec. 2, 2014) (quoting Rooks v. Chattanooga Elec. Power Bd., 738 F. Supp. 1163, 1164 (E.D. Tenn. 1990)).

Defendant cites Moses v. Erlanger Med. Ctr., No. 03A01-9505-CV-00153, 1995 WL 610243 (Tenn. Ct. App. Oct. 18, 1995), as support for its argument. The plaintiff in Moses brought a state law tort claim against a government defendant. Id. at *1–2. The court dismissed the claim, holding that the GTLA barred recovery for injuries arising from the state law tort claim of infliction of mental anguish because the defendant was a governmental entity. Id. at *3. Claims brought under Title I of the ADA, however, expose employers, including Defendant, to liability for discrimination based on an employee's disability. As Plaintiff's claims are brought

under a federal statute, the Court DENIES summary judgment on this issue.

**F.      Reinstatement**

The BOE states that it is entitled to summary judgment on the issue of whether Plaintiff can be reinstated to an administrative position with the BOE because by Plaintiff's own testimony, and the statements contained in her social security disability application, she could not be reinstated. (D.E. 23-1 at 16–17.)  In response, Plaintiff claims she would have continued working for Defendant had she been offered reasonable accommodations.  (D.E. 28 at 14–15.)

"A prima facie case of disability discrimination requires that the plaintiff prove [she] was qualified to perform [her] job requirements with or without reasonable accommodation." Williams v. London Util. Comm'n, 375 F.3d 424, 429 (6th Cir. 2004).  This can create incongruities when a Plaintiff also seeks Social Security disability benefits, which require a showing of total disability.  Id.  The Supreme Court has stated that ADA plaintiffs cannot ignore this contradiction and must proffer a sufficient explanation.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).  In order to survive a motion for summary judgment, the plaintiff's "explanation must be sufficient to warrant a reasonable juror's concluding that . . . the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"  Id. at 807.

Childers applied for disability benefits while she was on medical leave for an unrelated workplace injury.  On the application, signed by Plaintiff, she represented that she could not perform many of the key duties required of a school teacher.  (Childers Dep. at 186–87, D.E. 23-4.)  Plaintiff was awarded disability benefits.  While her representations on the disability application negate an essential element of her ADA case, the Court finds that she has offered a sufficient explanation regarding that contradiction.  Plaintiff states that had she been given a

reasonable accommodation by Defendant, she could have continued performing the essential functions of her job. (Childers Dec. ¶ 21, D.E. 28-11.) When no accommodation appeared to be forthcoming, she applied for disability benefits. (Id. ¶ 20.) A reasonable jury could conclude that Plaintiff would have continued to perform the essential functions of her job with an accommodation. Cleveland, 526 U.S. at 807. The Court, therefore, DENIES Defendant's request for summary judgment on this issue.

*Conclusion*

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for unlawful demotion, common law retaliation, and punitive damages are hereby DISMISSED.

IT IS SO ORDERED this 15th day of January, 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE